FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 26 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
LAZARO HUMBERTO MINTO,

                Petitioner,

- against -

WARDEN DUKE TERRELL,

                Respondent.

---------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

10 Civ. 0565 (BMC)

**COGAN**, District Judge.

Petitioner, *pro se* files this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds that the Federal Bureau of Prisons ("BOP") improperly applied 18 U.S.C. §§ 3621(b) and 3624(c) ("Second Chance Act") in refusing to immediately transfer or consider transferring him to a Residential Re-Entry Center ("RRC"). For the seasons set forth below, the petition is denied.

## BACKGROUND

Petitioner has been in jail since his arrest on September 25, 1997. On January 23, 1998, he pled guilty to one count of possession with intent to distribute cocaine base and the United States District Court for the Eastern District of Texas subsequently sentenced him to 210 months in jail, followed by five years' supervised release.[1] Petitioner received credit for the time spent in custody between his arrest and his guilty plea.

---

[1] Although his petition stated that he was sentenced to 235 months, in his reply brief petitioner appears to have adopted respondent's statement that he was sentenced to 210 months. Regardless, the 25 month discrepancy is immaterial because petitioner's claim does not turn on timeliness.

1

At some point, petitioner was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, New York.[2] His projected release date from the MDC is January 16, 2013. On October 28, 2009, after completing their annual Program Review, petitioner's Unit Team recommended that he be considered for placement in an RRC program no sooner than June 16, 2011, 19 months before his release date. The team filled out an eight-page long Inmate Skills Development Plan, which took into account the following factors: academic; vocational/career; interpersonal; wellness; mental health; cognitive; character; leisure; and daily living. Each factor on the form includes numerous sub-categories. The Unit Team described petitioner's personal character as an "insufficient variety of behaviors to warrant overall positive personal character." The evaluation discussed petitioner's history of unstable housing and noted that his criminal history stretched beyond the cocaine conviction and included a previous theft conviction and multiple drug offenses. The totality of their evaluation led the Unit Team to their conclusion that petitioner will be considered for RRC placement at 17 to 19 months before his release date.

At some point, petitioner delivered what he described as a "cop-out requesting to be immediately considered for transfer" to an RRC to his case manager. In response, petitioner was told that consistent with BOP's Program Statement 7310.04 Community Corrections Center Utilization and Transfer Procedure ("Program Statement"), he would be considered for RRC placement when he had 18 months or less remaining in his sentence. The Program Statement directs that "[p]reliminary decisions regarding eligibility for CC Programs are to be made well in advance of the last year of confinement" and that "[a] final and specific release preparation plan, including a decision as to CCC referral, is normally established at a team meeting no later than 11 to 13 months before an inmate's projected release."

---

[2] Respondent states that petitioner was transferred on July 29, 2009 while petitioner contends it was some two years earlier on November 13, 2007. Again, the discrepancy is irrelevant to the determination.

2

The "cop-out" was petitioner's first and only administrative challenge to the Unit Team's determination.

## DISCUSSION

In Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001), the Second Circuit established that exhaustion of administrative remedies is a prerequisite to federal habeas relief pursuant to § 2241. The exhaustion requirement affords "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" and also creates an administrative record that facilitates judicial review. Jones v. Bock, 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted). The exhaustion requirement is "prudential, not statutory." Pimental v. Gonzales, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005). Prudential exhaustion requirements are judicially-imposed and may be waived in certain circumstances, including when pursuing the administrative appeal would be futile. Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003) (quoting Able v. United States, 88 F.3d 1280, 1288 (2d Cir. 1996)). As the Second Circuit explained in Beharry: "If a petitioner can show 'that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the [petitioner] from the requirement'." 329 F.3d at 62 (quoting Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993)); see Daraio v. Lappin, 08CV1812, 2009 U.S. Dist. LEXIS 9675, at *8 (D. Conn. Feb. 9, 2009) ("Thus, to argue that exhaustion is futile is to argue that the purposes of exhaustion will not be met by the administrative process.") (citation omitted).

Federal inmates who seek to challenge the conditions of their confinement must first utilize the four-step Administrative Remedy Program developed by the BOP. See 28 C.F.R. §§ 542.10-.19. First, the inmate must attempt informal resolution, followed by submitting a formal

3

written Administrative Remedy Request to the institution at which he is housed. If these result in an unfavorable decision, the next step is appeal to the Regional Director of the BOP and, finally, appeal at the regional level, to the BOP's General Counsel. Only after making the requests and filing the appeals has the inmate exhausted his administrative remedies.

In this case, petitioner acknowledges that he has not exhausted his administrative remedies. He argues that the exhaustion requirement should be waived as futile as he is challenging the "validity" of a BOP policy, which itself "is in direct conflict with [18 U.S.C. §] 3621(b)." Section 3621(b) requires that when BOP make the ultimate decision of whether to place a prisoner in an RRC it do so on an individualized basis. There is, however, no requirement that such factors be considered when BOP makes the initial determination of when to make the final RRC determination. Petitioner's futility argument is therefore premature. He can only argue that BOP has failed to meet its statutory obligations once those obligations have been triggered, i.e., once the final decision of whether to place him in an RRC has been made.

The only individualized determination required before the ultimate decision of whether or not to place an inmate in an RRC is set forth in the Program Statement. The Program Statement, at most, requires BOP to establish a final release preparation plan 11 to 13 months before an inmate's release. Here, BOP has stated that it will consider petitioner's suitability for RRC placement 17 to 19 months before the end of his sentence, which is at least six months before he could be placed in an RRC and at least four months before the Program Statement requires.

Therefore, because petitioner has failed to exhaust his administrative remedies and offered no compelling reason for waiving the exhaustion requirement, his petition is denied.

## CONCLUSION

For the reasons set forth above, petitioner's application for a writ of habeas corpus is denied, and the petition dismissed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962).

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
July 23, 2010